633 S.E.2d 531

**Pamela BLETHEN, et al., Petitioners Below, Appellants**

v.

**WEST VIRGINIA DEPARTMENT OF REVENUE/STATE TAX DEPART-MENT and West Virginia Division of Personnel, Respondents Below, Appellees.**

No. 32962.

Supreme Court of Appeals of West Virginia.

Submitted: May 23, 2006.

Decided: June 29, 2006.

John F. Dascoli, The Segal Law Firm, James P. McHugh, McHugh & Williams, Frank J. Venezia, Shaffer & Shaffer, Charleston, for the Appellants.

Darrell V. McGraw, Jr., Attorney General, A.M. "Fenway" Pollack, Assistant Attorney General, Karen O'Sullivan Thornton, Assistant Attorney General, Charleston, for the Respondents.

PER CURIAM.

This is an appeal of current and former employees of the West Virginia Tax Department (hereinafter sometimes referred to as "Appellants") from the March 17, 2005, final order of the Circuit Court of Kanawha County issued upon completion of judicial review of a decision of the West Virginia Education and State Employees Grievance Board (hereinafter referred to as "Grievance Board") involving Appellants' complaints against the West Virginia Department of Revenue/State Tax Department and the West Virginia Division of Personnel (hereinafter referred to collectively as "Respondents").[1] The Grievance Board decision reviewed by the lower court involved two consolidated multi-party grievances, one alleging equal pay for equal work violations and the other contending an improper pay grade differential between Appellants and their supervisors. By its order, the lower court affirmed portions of the Grievance Board decision finding that three of the grievants lacked standing because they were no longer employees when the grievances were filed and that the equal pay for equal work claims of twenty of the twenty-nine grievants were barred by the doctrine of res judicata. The order also served as a vehicle to remand nine of the equal pay for equal work grievances and all of the pay grade grievances back to the Grievance Board for a determination regarding whether they were timely filed.

In consideration of the parties' arguments, the relevant record and the applicable law, we affirm the action of the lower court.

## I. Factual and Procedural Background

This case involves twenty-six current and three former Tax Department workers hired for the position of Research Agent II (hereinafter referred to as "RA II") who separately filed two different grievances in 2003 that

---

1. Subsequent reference to the individual agencies will be to the Tax Department and Division of Personnel, respectively.

were consolidated at Level IV of the grievance process.[2] The first grievance (hereinafter referred to as the "*Blethen* claim") alleged that the Tax Department position of RA II and the then existing position of Credit Analyst II (hereinafter referred to as "CA II") within the Workers' Compensation Division of the Bureau of Employment Programs performed the same essential tasks and should have the same pay under the principle of equal pay for equal work.[3] The second grievance (hereinafter referred to as the "*Ferguson* claim") alleged that a four pay grade difference within the Tax Department between the RA II position and the supervisors of the RA II position was a violation of a Division of Personnel policy. In sum, while both claims assert pay inequity, the *Blethen* claim involves interagency unfairness and the *Ferguson* claim concerns an intra-agency disparity.

In 1999, twenty of the twenty-nine workers involved in the *Blethen* claim, including the three former employees, had filed a grievance known as the *Bonnett* claim which addressed the same equal pay for equal work issue. After losing at Level IV of the grievance process, some of the *Bonnett* grievants pursued an appeal to the circuit court[4] which resulted in dismissal on March 1, 2001. No further appeal was taken and the March 1, 2001, *Bonnett* decision became final.

In May 2003, the twenty *Bonnett* grievants and nine additional RA II workers filed the *Blethen* claim alleging that they should be paid the same as the CA II workers. The basis alleged for filing these claims was the January 2, 2003, final circuit court order in a case styled *Stanley v. Department of Tax and Revenue* involving the appeal of yet another Grievance Board decision. In the

*Stanley* case, the circuit court determined that the Grievance Board erred because the lower court found that the supervisors of the RA II workers and the supervisors of the CA II workers were performing nearly identical work and should be paid the same. The *Blethen* grievants asserted that the *Stanley* case created a new grievable event.

In September 2003, the *Ferguson* grievances were initiated by essentially the same employees as those asserting the *Blethen* claim. The *Ferguson* claims also relied on the *Stanley* decision as the grievable event in that the *Stanley* decision resulted in a widening disparity in pay between the RA II position and the supervisor position.[5]

The *Blethen* and *Ferguson* grievances were consolidated at Level IV and a Grievance Board decision dated September 15, 2004, was issued by the administrative law judge (hereinafter referred to as "ALJ") assigned to hear the complaints. The order relates that the merits of the grievances were not reached as the ALJ determined that the jurisdictional affirmative defenses advanced by Respondents were dispositive of the case. With regard to the *Blethen* claims, the ALJ held that the twenty grievants[6] raising the *Blethen* claim who were also part of the earlier *Bonnett* grievance were precluded under the doctrine of res judicata from relitigating this issue. The claims of the remaining nine *Blethen* grievants were dismissed along with the *Ferguson* claims as being untimely filed. The ALJ further found with regard to the *Ferguson* claims that the *Stanley* decision served only to provide a new legal argument rather than to create a new grievable event because the grievants knew of the facts giving rise to their claims when they accepted the RA II positions with

---

2. As represented in the published Level IV Decision, the grievances were initially filed against the Tax Department as the employer and the Division of Personnel was joined as an indispensable party at Level III of the grievance process.

3. The RA II pay grade is 12 and the CA II pay grade is 14.

4. In the circuit court, the March 2001 appeal of the *Bonnett* decision was styled *Ferguson v. State of West Virginia, Department of Tax and Revenue and Division of Personnel.* To avoid confusion

with the *Ferguson* claim in the instant consolidated grievance, matters involving the March 2001 circuit court appeal will be referred to under the name of *Bonnett* rather than *Ferguson.*

5. Before the *Stanley* decision was implemented, there was a two pay grade difference between RA II workers and their supervisors; the *Stanley* decision effected a four grade pay difference between the positions.

6. The three former employees were among these twenty *Blethen* grievants.

the assigned pay grade. Finally, the September 15, 2004, decision related that the former employees' claims were also dismissed because the grievants lacked standing in that they were not employees of the Tax Department at the time the grievances were filed and termination was not the subject of their grievances.

Appellants asserted in their appeal and subsequent pleadings in the circuit court that the ALJ's decision was incorrect and requested that the matter be remanded to the ALJ for a decision on the merits. The circuit court rendered its decision by order dated March 17, 2005, in which a portion of the ALJ's decision was affirmed and another portion of that decision was remanded to the Grievance Board. Essentially, by its order the circuit court affirmed the dismissal of the twenty *Blethen* claims on res judicata grounds and concurred in the dismissal of all of the former employees' claims due to lack of standing. The claims of the remaining nine *Blethen* grievants and twenty-six *Ferguson* grievants were remanded to the Grievance Board as a result of the March 17, 2005, order to allow the ALJ to rule on whether the continuing practice exception to the timeliness requirements would allow those grievances to proceed. Appellants petitioned this Court for review of that part of the March 17, 2005, circuit court order dismissing claims on the basis of res judicata and lack of standing. The petition for appeal was granted by this Court on January 10, 2006.

## II. Standard of Review

 This appeal involves the review of circuit court rulings in a contested case under the West Virginia Administrative Procedure Act (hereinafter referred to as "Act"). Pursuant to the Act, a circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court is permitted under the Act to reverse, vacate or modify the order or decision of the agency only when the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedures; or

(4) Affected by other error of law; or

(5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W.Va.Code § 29A–5–4(g) (1998) (Repl.Vol. 2002). Our examination of the circuit court order in these circumstances "is bound by the statutory standards contained in W.Va. Code § 29A–5–4(a)." Syl. Pt. 1, in part, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996). Additionally, we review questions of law presented de novo while the findings of fact by the administrative officer are accorded deference unless this Court believes the findings to be clearly wrong. *Id.* Thus, as the decisions of the circuit court and the Grievance Board center on questions of law, we proceed with our review de novo. *Smith v. W.Va. Div. of Rehabilitative Services and Div. of Personnel,* 208 W.Va. 284, 286, 540 S.E.2d 152, 154 (2000).

## III. Discussion

We begin by examining Appellants' contention that the lower court erred by affirming the Grievance Board's dismissal of the twenty *Blethen* claims on the ground that the matter had already been decided in 2001 in the *Bonnett* grievance and was barred under the doctrine of res judicata. More to the point, Appellants claim that res judicata does not apply to the *Blethen* claims because the precedent was changed by the *Bonnett* decision.

 As a result of our analysis of the subject of res judicata in *Blake v. Charleston Area Medical Center, Inc.,* 201 W.Va. 469, 498 S.E.2d 41 (1997), we concluded in syllabus point four that

[b]efore the prosecution of a lawsuit may be barred on the basis of *res judicata,* three elements must be satisfied. First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings.

Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.

Appellants do not question the validity of this legal tenet. Rather, they argue that it is clear from the syllabus of this Court's decision in *Huntington Brick & Tile Co. v. Public Service Commission*, 107 W.Va. 569, 149 S.E. 677 (1929), that "[t]he doctrine of *res judicata* does not prevent a re-examination of the same question between the same parties when, subsequent to the judgment, facts have arisen which may alter the rights of the litigants." The change in circumstances or law upon which Appellants herein rely is the circuit court's decision in *Stanley*.[7]

Our study of the *Stanley* decision leads us to conclude that no new circumstance or legal determination was made which would alter the rights of Appellants in the manner contemplated in *Huntington Brick*. *Huntington Brick* involved the appeal of a Public Service Commission decision to refuse to require a gas company to furnish fuel to Huntington Brick and another company on the basis of res judicata because the controlling facts in a previously decided case involving the parties were not substantially different. Following a detailed comparison of the facts in each case, this Court concluded "that conditions affecting the defendants have changed so materially since the former decision that the doctrine of *res judicata* does not apply." 107 W.Va. at 573, 149 S.E. at 678.

■ Contrary to Appellants' urging, we find no such change in facts or circumstances in the body of the *Stanley* order. The final order of the circuit court in *Stanley* was limited in its scope to the pay rate of the RA II **Supervisors**. The circuit court made a detailed comparison of the duties of the RA II **Supervisors** and the CA II **Supervisors** to arrive at the conclusion that the RA II Supervisors were entitled to the same pay level as their CA II counterparts. However, the circuit court did not examine the job similarities and differences of the subordinates of the supervisors nor the respective pay of the subordinates in arriving at its decision, causing us to conclude that the *Stanley* decision did not include the ruling claimed by Appellants that the RA II position and CA II position entail the same work and should receive the same pay.[8] Without a change of circumstance or law, the exception to the applicability of the doctrine of res judicata found in *Huntington Brick* simply is not pertinent to this case. Since Appellants do not dispute that they were parties to the prior *Bonnett* case involving the same essential claim which was decided on the merits by a court having jurisdiction, we do not find that the dismissal of the twenty *Blethen* claims on res judicata grounds was clearly wrong, contrary to law, or otherwise arbitrary.

Appellants second argument concerns the lower court's agreement with the Grievance Board's conclusion that former state employees lack standing to utilize the state employees' grievance procedure, West Virginia Code Chapter 29, Article 6A. Because we have thus far determined that dismissal of the *Blethen* claims was appropriate on the grounds of res judicata, our discussion regarding the standing argument is limited to whether the former employees' grievances are entitled to be considered in the remand of the *Ferguson* claims.

■ As the lower court observed, the Grievance Board decision did not include the finding that *all* former employees are pre-

7. There was some disagreement between the parties with regard to exactly what was considered by the circuit court in the *Stanley* case, and the final order was not part of the record certified to the Court in this appeal. Consequently, the Clerk of Court obtained a certified copy of the final order in the *Stanley* case, Civil Action No. 01–AA–93, from the office of the Circuit Court Clerk of Kanawha County so that a thorough study of the document could be undertaken. The Court takes judicial notice of said final order.

8. The RA II and CA II positions are referred to in an explanatory footnote, but no analysis of those positions was undertaken in any part of the *Stanley* order.

cluded from utilizing the grievance procedure. Rather, as summarized in the circuit court's order, the "ALJ ... found that because the three prior employees were not employees at the time they filed their grievances, and because the grievance did not relate to their termination, the grievants had no standing in which to utilize the grievance process." The Conclusion of Law portion of the Grievance Board decision represents that the standing ruling was made in reliance on prior decisions of the Grievance Board which specify that former employees may access the grievance procedure in the event that the "termination is the subject of their grievance, or their grievance was initiated before their employment relationship was severed, and the subject matter of such grievance was not rendered moot by the termination of their employment status." (Citations omitted.)

Appellants ask us to deviate from the precedent relied upon by the Grievance Board and adopt a contrary, more expansive reading of the statutory definition of employee appearing in the grievance statutes [9] so that all former employees, regardless of reason or time lapse, have access to the grievance procedure. We are not prepared to accept this invitation, especially under the circumstances before us where the record does not disclose facts regarding the termination of the former employees, nor is any explanation provided regarding any substantial injustice the current practice perpetuates. We simply are provided with no basis on which to find that the Grievance Board's standard is an unreasonable interpretation of the statute or is otherwise arbitrary or capricious so as to represent an abuse of discretion. As a result, we find no error in the dismissal of the *Ferguson* claims of the three former Tax Department employees for lack of standing.

### IV. Conclusion

For the above reasons, we find no error in the dismissal of the grievances on the grounds of res judicata and lack of standing, and we affirm the March 17, 2005, order of the Circuit Court of Kanawha County in this regard.

Affirmed.

---

9. West Virginia Code § 29–6A–2 (1988) (Repl. Vol.2004) contains the definitions applicable to the grievance procedure for state employees and is silent regarding applicability of its provisions to former employees. The definition assigned to the term employee appearing in the grievance statute reads as follows:

> (e) "Employee" means any person hired for permanent employment, either full or part-time, by any department, agency, commission or board of the state created by an act of the Legislature, except those persons employed by the board of regents [abolished] or by any state institution of higher education, members of the department of public safety [West Virginia state police], any employees of any constitutional officer unless they are covered under the civil service system and any employees of the Legislature. The definition of "employee" shall not include any patient or inmate employed in a state institution.